Kirkpatrick, C. J.
This case has been argued by the defendant as if the legacy to Mary Catharine, were a legacy charged upon land, and therefore, upon the death of the legatee, before the day of payment, [*] would become merged for the benefit of the heir.
It does not appear to me to be so. It is a devise of land to be sold by the executor, after the death or re-marriage of the widow, and of the net proceeds thereof to be equally divided among the testator’s eight children, of whom Mary Catharine is one. The legacy therefore is not charged upon lands descending to the heir, the money is not to be raised by him, he has no beneficial interest in the realty out of which it is to be made. He may indeed, by a mere fiction of law, be let in to support the fee in remainder until the time appointed for the sale, but that is all. The sale is to be made at all events. The land is to be converted into money for the convenience of the family, and especially to make portions for daughters and younger children. I am therefore, inclined to think, upon the authority of 1. Bur. 227, 1 Vesey, 320, 2 Ath. 127, 3 Atlc. 319, and Talbot, 79, that the fund is to be considered as money, and to be subjected to the same law.
But to take up the question on the defendant’s own ground.
*326 It is certain that legacies charged upon land are subject to different rules from those charged upon the personal estate only. If a legacy charged upon the personal estate only, be given unconditionally, and dependent upon no future contingency, then, though the day of payment be postponed, as if it be to be paid when the legatee attains the age of twenty-one years, or marries, or other contingency happens, yet if the legatee die before that day, his representatives shall take. It is a vested legacy, it cannot fall. But if such legacy be charged upon land in the hands of the hem, [555] and that whether it be the. hceres natus or the hceres factus, and the legatee die before the day of payment, it will not go to his representatives, but will [*] merge in the land for the benefit of the heirs. This is the general rule.
But then there is an exception to this rule, as well settled at this day as the rule itself. It is this, that when the payment is postponed merely for the convenience and benefit of the estate and family, and not on account of considerations relative to the legatee himself, then, though the legatee died before the day of payment, yet the legacy shall not merge for the benefit of the heirs, but shall go to the representative. It is a vested legacy.
Now in the case before us, the testator is making an equal distribution of his estate among his children, and this distribution is postponed, as is manifest from the whole face of the will, in consideration of the circumstances of the estate and family. It is postponed in order to make a comfortable provision for the widow, and that too in lieu of her dower. If this necessity had been out of the way, the distribution would have been immediate. There was no consideration, no circumstance, no contingency ’ immediately connected with this legatee, which was the ground of the postponement.
The reasoning of the general rule, therefore, does not apply to the present case. It is an exception.
*327 Upon the defendant’s own ground of argument, therefore, I think the law is against him. The plaintiff must have judgment.
Let a statement be made of the sum due with interest, and we will look at it.
Rossell, J.
Was of opinion that the plaintiff ought to recover.
Pennington, J.
Jacob Kline gave by will, his real estate to his widow for life, or widowhood; and at her death or marriage, he ordered his executor to sell the same; the money arising from which, he gave to his eight children, by name, to be equally [*] divided among them, share and share alike; Mary Catherine, the intestate, being one. After the death of Jacob Kline, the testator, and before the death or marriage of the widow, the tenant for life, Mary Catherine, died, leaving five children, and the plaintiff, her husband, who becomes her administrator. The widow dies. The executor sells the estate and raises the money. The question is, whether the husband, as administrator to his wife, is entitled to her share of the money arising from the sale. It appears to me that the only question for our determination is, whether this was a vested interest in Mary Catherine, at her death; for if it was not, I am clearly of opinion, that it would be a [556] resulting trust for the heir at law. If this had been a bequest of personal property, beyond all question, the interest would have been a vested one, and would have been transmissible. It. is a certain present gift, to be paid at a future time. But notwithstanding the land is ordered to be converted into money, yet I do not consider it as a personal legacy. The ecclesiastical courts could not take cognizance of it as such; Dyer 151; Hob. $65. It is a testamentary bequest of a sum of money to be raised out of the sale of land, which renders it necessary to consider the distinction set up in a court of chancery between an interest arising out of land, and a bequest of personal *328 property. ' Equity, in respect to personal legacies, lias followed the ecclesiastical courts, which are governed by the civil law rule; that a present gift, although payable at a future time, is a vested interest, and transmissible to personal representatives. The court of chancery, however, has determined that a charge on land, payable at a future day, shall not be raised when the party dies before the day of payment. This doctrine began in the case of portions provided for younger children, where payment was directed to be made at the age of 21, or marriage, or some certain time, according with the circumstances of the person to be provided for. It was [*] considered that when the child died before twenty-one, or marriage, that the portion was not wanted, and in favor of the heir at law, out of whose estate it was to be raised, it was said to sink into the inheritance. It was looked upon as a burden on the real estate created for a particular purpose; the object of which had failed. The controversy most commonly arose between an administrator, a stranger to the inheritance, and the heir at law, the head of a great family, who, according to the policy of the English government, was greatly favored. The leading case on this subject is that of Poulet v. Poulet, 1 Vern. 204, 321; where a jointress, a second wife, who had already been liberally provided for, out of the estate, was attempting, as administratrix to her deceased daughter, to carry off a large portion that had been provided for the daughter, chargeable on the real estate, and payable at the age of twenty-one, or marriage; but who had died at the age of eight years. The chancellor first hesitated, but at length decided in favor of the heir at law, Lord Poulet, against the administratrix. The rule having once obtained footing, it was followed up by subsequent decisions, and applied to all cases, whether the land was the primary or auxilary fund; whether the charge was created by deed or will, a portion or a legacy, for a child or stranger, payable with or without interest. [557] I have, however, carefully looked into the cases, *329 and can find none analogous to the ease under consideration, where the whole of the real estate is ordered to be sold, and the money arising therefrom, given in equal shares among the testator’s children. In reviewing this doctrine, Lord Hardwicke says, it was a case of pretty hard digestion at first; but to prevent unnecessary burdens on heirs, the court was prevailed on to adopt the rule. There is not a perfect accoi’dance, howevex’, in the cases on the subject, exceptions having been made to this general rule; one is, that when the day of payment is postponed from [*] the circumstances of the fund, and not arising from the circumstances or situatioxi of the person to take, though I believe that no case has been decided solely on that distinction, yet it has weighed much in several; in some cases it has been much relied on. Aix intention in the testator, apparent from the whole will, that the party in whose favor the provision is made, should take in all events, is not to be injected. The case of King v. Wethers, Free, in Oh. 848 ; Lowther v. Condon, 8 Atk. 127; Sherman v. Collins, 3 Atk. 319, PittfLeld’s case, 2 P. Wil. 4-18, are all exceptions to the rule, founded on the particular circumstances of the respective cases. In the ease under consideration, there is no heir at law in whom the property remains, whose interest is to be consulted; the testator intended an equal division of his property among his children. Should the share intended for Mary Catharine not take effect, it cannot sink into the inhexltance; the inheritance is destroyed; in raising the fund, it can only go as a resulting trust to the heir at law, and this not to favor the heir, but from necessity, because it is undisposed of. The strong inducement to protect the inheritance, and preserve it unburdened in the hands of the heir, which had so px*evailing an influence in forming the rule, is out of the case. The provision in question was a preseixt gift: the payment of which was postponed for the convenience of the widow. In the case of Sherman v. Collins, Lord Hardwicke says, that *330 in the ease of Lowther v. Condon, the strong reason that weighed with him was, that the portion was directed to be raised after the death of the testator’s wife, and therefore postponed merely from the convenience of the estate and family, and not intended that the daughters should lose their portions because they died before their mother. Another circumstance in the case is, that Mary Catharine married, and had children. The circumstance of marriage was particularly relied on in the case of Lowther [*] v. Condon. In Pittfield’s ease, the Lord Chancellor observed that equity had strained sometimes to help [558] a daughter married in her father’s lifetime, to her portion, but never to deprive a married daughter thereof. This bequest must have had a tendency to promote the daughter in marriage; and merely because she died before she came into the actual possession of it, is no reason that she should be deprived of it; nor can it be presumed that this was the intention of the testator, but the contrary. The bequest is an absolute unqualified present gift, to be paid at a time that must certainly come — the death or marriage of the mother, or as soon after as the land could • be sold. It ivas postponed not from any circumstance respecting the daughter, but from the situation of the fund, it being until that tune employed in the support of her mother. The reasoning and principles that governed the case of Poulet v. Poulet, and the subsequent analogous case, do not apply to the case under consideration. This is not a charge on a subsisting real estate in the hands of the heir at law; the estate is sold; and the question is, Avhether the provision for this daughter being raised out of the real estate, is a resulting trust in the hands of the executor, for the use of the heir at law, and to be diAnded according to our statute on the subject, or shall go to her. personal representative. If the doctrine contended for by the counsel for the defendant is correct, the case would be the same if the husband of Mary Catharine had died before her. The question then would *331 have been between her children and her brothers and sisters; in which case, could there have been a doubt as to the right of the children? Equity would have revolted at the idea of adding one calamity to another, by taking from the children, the patrimony of the mother on her premature death; and it is to be remembered that it is from a court of equity that this whole doctrine is derived. For these reasons, I am of opinion, that the interest was vested in Mary [*] Catharine at her death, and that it is transmissible to her representatives, and of consequence that the plaintiff must have judgment, and that he is entitled to interest from the death of the mother.
I have had some doubt of the jurisdiction of this court in this case; it being a proper subject of chancery jurisdiction, under the head of legal trusts. But on the wdiole, I incline to think that the chancery and common law courts have a concurrent jurisdiction of the subject matter; and as this point has not been taken, it requires no further notice.
After these opinions were delivered, the parties agreed on the sum due, and judgment was rendered accordingly for the plaintiff
Approved is Wintermute v. Snyder, 2 Gr. Ch. 489; Readings. Blackwell, Bald. C. C.166; Rinehart v. Harrison, Bald, C. C. 177. Cited in Post v. Herbert's Exrs. 12 C. E. Gr. 545.